**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA DITKOWSKY, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>)<br>A.G. EDWARDS & SONS, INC., et al. )<br>      Defendants. ) | | No. 09 C 6563<br>Blanche M. Manning |

## MEMORANDUM AND ORDER

The plaintiff, Lisa Ditkowsky, has filed a motion to vacate an arbitration award and the defendants have cross-moved to confirm the award. For the reasons stated below, the plaintiff's motion to vacate is denied and the defendants' cross-motion to confirm is granted.

## Background

The court assumes familiarity with the underlying facts of the case and discusses them only briefly. A.G. Edwards & Sons employed the plaintiff as a financial consultant in its Skokie office from December of 2004 through December of 2006. During this period, defendant Alan Dubrow was the branch manager of the Skokie office, defendant Robert Batchen was the assistant branch manager, defendants David Forlow and Gary Chesen were financial consultants, and defendant Melissa Kelpsch was a financial associate. According to A.G. Edwards, the plaintiff's inability to appropriately interact with her colleagues led to her termination.

The plaintiff obtained a right to sue letter from the EEOC and filed suit in the Circuit Court of Cook County. The plaintiff alleged that the defendants retaliated and discriminated against her in violation of Title VII of the Civil Rights Act of 1964, portrayed her in a false light and breached an alleged contract with her. The defendants removed the case to federal court and successfully moved this court to compel arbitration. On June 6, 2009, the arbitration panel

rendered an award in favor of the defendants. The plaintiff now moves to vacate that award. The defendants, in turn, oppose the plaintiff's motion and move to confirm the arbitration award.

The court also notes at the outset that the plaintiff's filings are lengthy, raise numerous unrelated issues and often fail to provide record support for her assertions. The court has attempted to organize the plaintiff's claims such that they can be addressed fully and efficiently. In addition, for reasons discussed later in this order, the parties have filed documents under two different case numbers. The court has attempted to indicate which case's docket number it is referring to when citing to the record.

## ANALYSIS

**A.     Motion to Strike**

The plaintiff has filed a motion to strike the defendants' Exhibit I to their motion to confirm the arbitration award, which is a transcript of the arbitration proceeding. According to the plaintiff, the defendants (1) "doctored" certain pages of the transcript and (2) purposely left out pages 148-149 of the transcript filed with the court.

As to point (1), the plaintiff wants the defendants to re-transcribe and refile pages 147-154 of the transcript so that it is a "true and accurate" reflection of what actually happened. According to the plaintiff, the transcript filed by the defendants omitted key words and objections by her counsel.

In response, the defendants' counsel filed an affidavit of their paralegal attesting as follows:

> 5.     Based upon [defense counsel's] instructions of which portions of the [arbitration] hearing she wanted transcribed I requested a copy of the May 2009 hearing sessions in the Arbitration. . . .
>
> 6.     . . . [D]igital recordings were transmitted to me on a CD.

> 7. I contacted Veritext Reporting Company and asked them to transcribe the digital recordings.
>
> 8. I provided Veritext with the correct spelling of the names of the speakers and places and asked them to format their work product into separate pages for separate digital recordings. . . .
>
> 9. I did not give Veritext any other instructions.

The defendants also note that the transcript they attached as Exhibit I is certified as true and accurate by the court reporters who transcribed the digital recordings.

As an initial matter, the court notes that the plaintiff already provided a new transcript, transcribed by the court reporter of her choosing. Thus, having the defendants "re-transcribe" certain portions of the transcript would be unnecessary and duplicative. Moreover, the plaintiff has also marked up pages 147-154 of the copy of the transcript provided by the defendants. *See* Plaintiff's Exh. BB to her Combined Reply, Dkt. #11-32. The court has listened to the digital recording, which was provided to the court by the plaintiff, of this portion of the arbitration hearing and finds that, while the plaintiff's changes are not substantive or substantial, they more accurately reflect the statements made at this part of the hearing. Accordingly, where in dispute, the court has considered the plaintiff's marked-up version of the transcript in resolving the parties' motions to vacate and confirm.

As to point (2), the missing pages 148-149 of Exhibit I, the defendants acknowledge that these two pages were "inadvertently omitted" from Exhibit I, and attach the pages as Exhibit A to their opposition to the plaintiff's motion to strike Exhibit I. *See* Dkt. #18. Moreover, as noted above, the plaintiff has provided a marked-up version of these pages, which accurately reflects that portion of the arbitration hearing and which the court has considered in resolving the parties' motions to vacate and confirm.

Accordingly, the plaintiff's motion to strike the defendants' Exhibit I is denied. As for the plaintiff's request that the matter be referred to the United States Attorney's office so that it can "determine who is responsible for . . . [the] transcriber . . . deleting all of Plaintiff's former Counsel's key words and key points in Plaintiff's favor," December 11, 2009, Dkt. # 19, at 5, this request is denied as the court concludes that the omissions or mistakes in the transcript obtained by the defendants were unintentional and insubstantial.

**B.      Plaintiff's Motion to Vacate and Defendant's Cross-Motion to Confirm**

      1.      Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforcement, validity, and interpretation of arbitration clauses in employment contracts as well as other commercial contracts. *See Circuit City v. Adams*, 532 U.S. 105, 109 (2001). In asking the court to vacate an arbitration award, the movant faces "a stiff burden." *Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.*, 04 C 5852, 2009 WL 3126288, at *3 (N.D. Ill. Sept. 24, 2009).

The FAA states that an award may be set aside in only four circumstances:

1. Where the award was procured by corruption, fraud, or undue means;

2. Where there was evident partiality or corruption in the arbitrators, or either of them;

3. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party may have been prejudiced; or

4. Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made

9 U.S.C. § 10(a).

"When parties seek judicial review of an arbitrator's award, the role of the courts, both

district and appellate, is extremely limited." *United Food and Commercial Workers, Local 1546 v. Illinois*, 569 F.3d 750, 754 (7th Cir. 2009)(citations omitted). As noted by the Seventh Circuit:

> Judicial review of arbitration awards is tightly limited; perhaps it ought not be called "review" at all. By including an arbitration clause in their contract the parties agree to submit disputes arising out of the contract to a nonjudicial forum, and we do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision.

*Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994)(citations omitted).

2. Ditkowsky's Claims

Here, the plaintiff complains that there was evident partiality or corruption under § 10(a)(2), the award was procured by fraud and/or corruption under § 10(a)(1), and that the arbitrators were guilty of misconduct for failing to hear evidence pertinent and material to the controversy under § 10(a)(3).

   a. *Objection to Purported Partiality on the Part of the Arbitrators*

The plaintiff argues that the arbitrators exhibited "evident partiality and/or corruption" throughout the arbitration hearing. "To set aside an award for arbitration partiality, '[t]he interest or bias ... must be direct, definite and capable of demonstration rather than remote, uncertain or speculative.'" *Health Services Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir. 1992)(citations omitted). Specifically, the plaintiff asserts that arbitrator Thomas Wallace "winked" at her, continually "smirked" at the defendants' attempts at humor, and "patted [a defendant] on the back" while commenting what a funny guy he was. According to the plaintiff, all of these actions indicate that Wallace held a "bias against her and her charges of serious workplace improprieties."

As noted by the defendants, the plaintiff fails to point to any part of the record in support of these assertions. Moreover, Sandra Grannum, the defendants' counsel at the arbitration,

attests that she did not witness any inappropriate winking, joking, or chuckling by Mr. Wallace. *See* Grannum Aff. at ¶¶23-24, attached as an exhibit to Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Vacate and in Support of Cross-Motion to Confirm. *See* Dkt. #34-1 (Case No. 07-4244).[1] Finally, the plaintiff's counsel never objected on the ground of perceived improprieties, even after the arbitration was adjourned for two weeks between the fourth and fifth days of the hearing. *See Smith v. Prudential Securities Inc.*, 846 F. Supp. 978, 981 (M.D. Fla. 1994)("If the terms used by Arbitrator Bennett were so 'egregious and harmfully prejudicial' to Defendant Counsel's ability to represent her client, she would not have allowed the proceedings to continue in this fashion for four or five days, without a timely opposition and objection to Arbitrator Bennett's alleged misconduct."). For all of these reasons, the court rejects this ground for relief.

In her reply, the plaintiff also raises for the first time the assertion that Arbitrators Hastings and Fox were biased against her based on the following conversation, which was captured on audiotape during a break in the arbitration hearing proceedings:

> **Arbitrator Hastings**: This is not going as rapidly as I would have thought.
>
> **Chairman Fox**: I know. And there's always sort of that ambivalence, because when you do these, especially at the end, you say, you know, did you have ample opportunity to take care of – because you want to make sure the only way they can

---

[1] In case number 07 C 4244, this court considered the defendant's motion to compel arbitration. When the plaintiff filed her original motion to vacate the arbitration award, she incorrectly filed it under the previous case number (07 C 4244) instead of opening a new case. Thus, the court had the clerk's office open the instant case, No. 09-6563, for the plaintiff's motion to vacate the arbitration award and the defendant's cross-motion to confirm. It appears that the defendants only filed their memorandum of law in opposition to the plaintiff's motion to vacate in case number 07 C 4244. *See* 07 C 4244, Dkt. #34-1. In addition, the court notes that the exhibits to the defendants' memorandum of law in opposition appear to have been filed on the electronic docket out of order.

really appeal anything is by bias or by saying they didn't have ample opportunity to present their case. So, you don't wanna cut them off, but on the other hand, then it's like they drone on.

**Arbitrator Hastings**: But, Alan, this –

**Chairman Fox**: It's a fine line, but I think we've probably (INAUDIBLE) –at this point, I think they've probably presented everything they could present.

(Laughter)

**Arbitrator Hastings**: Yeah.

**Chairman Fox**: I said, at this point they've probably presented everything they could have presented and more.

(Laughter)

**Chairman Fox**: And who else is left.

**Arbitrator Hastings**: Uh –

**Chairman Fox**: Except this case is down the tubes. [2]

Plaintiff's Exh. C at 266-67.

However, as noted by the defendants, the plaintiff had rested her case at the end of April and this recording was made during the defendants' presentation of their case in May. Thus, from the context, the arbitrators appear to be complaining about the length of the defendants' presentation, not the plaintiff's. In any event, even if the conversation is about the plaintiff, the Seventh Circuit, in quoting the Second Circuit, has stated that:

---

[2]The defendants assert that an alternative interpretation of what was said is "Except this case is done at 2:00." The court, however, has listened to the digital audio of this portion of the proceedings and agrees with the plaintiff's interpretation in which Fox says "Except this case is down the tubes."

> It is to be expected that after a judge or an arbitrator has heard considerable testimony, he will have some view of the case. As long as that view is one which arises from the evidence and the conduct of the parties it cannot be fairly claimed that some expression of that view amounts to bias ... While it is better in most cases for arbitrators to be chary in expressing any opinion before they reach their ultimate conclusion ... it does not follow that such expressions are proof of bias.

*Health Services Management Corp.*, 975 F.2d at 1267 (citations omitted). Here, the comments by arbitrators Fox and Hastings are based on the conduct of the parties and the evidence they have presented. Accordingly, the court rejects the plaintiff's position that Fox and Hastings demonstrated evident partiality.

The plaintiff also contends that Arbitrator Hastings said "I say throw away all the sex counts . . . (chuckle) . . . and then, there's nothing." However, none of the transcript pages cited by the plaintiff contain this statement. Accordingly, the court will not consider the arguments related to it.

   b. *Award Procured on the Basis of Fraud, Corruption or Undue Means*

"Section 10(a)(1) of the FAA calls for the court to consider whether [the] alleged fraud [or corruption or undue means] was (1) not discoverable upon the exercise of due diligence prior to the arbitration; (2) materially related to an issue in the arbitration; and (3) established by clear and convincing evidence." *Environmental Barrier Co., LLC v. Slurry Systems, Inc.*, 540 F.3d 598, 608 (7th Cir. 2008)(citation omitted). Further, there "must [be] a nexus between the purported fraud and the arbitrator's final decision." *Id*.

    i. <u>Objection to Position of Sandra Grannum</u>

The plaintiff objects to the fact that counsel for the defendants at the arbitration hearing, Sandra Grannum, held a prior position on the National Arbitration and Mediation Committee

(NAMC) for FINRA.³ According to the plaintiff, this created a conflict of interest on her part because Ms. Grannum, by virtue of her prior position, held power over the arbitrators, their conduct, and their selection. Furthermore, the plaintiff asserts that the defendants should have disclosed this conflict to her. She explains that she only learned about it after engaging in "research beyond what the average person would attempt" and contends that had she been made aware of the conflict, she would have undoubtedly raised an objection.

This court concludes that the plaintiff has failed to demonstrate that the alleged "undue influence" by Ms. Grannum was materially related to any issues in the arbitration. Ms. Grannum's affidavit emphasizes that she had no "financial, familiar [sic], professional, or social association" with any of the arbitrators serving on the panel. Grannum Aff. at ¶ 44, Dkt. #34-1 (07 C 4244). Indeed, Ms. Grannum attests that she has no recollection of having known or heard of any of the arbitrators at any time prior to the hearing and has no reason to believe that the arbitrators knew her or knew of her. *Id*. at 44. Additionally, as Ms. Grannum attests in her affidavit, she was appointed to the committee at least twelve years after the arbitrators in the instant case were accepted by NASD/FINRA and thus, she did not participate in any decisions regarding their applications to become arbitrators. Finally, contrary to the plaintiff's conclusory assertion that the arbitrators "surely" were familiar with the FINRA committee that oversees them, Ms. Grannum states in her affidavit that her service on the NAMC ended before the arbitration hearing in the instant case began. *Id*. at ¶¶ 36, 41-43. Finally, it is unrebutted by the plaintiff that Ms. Grannum's position on the NAMC was public information that was present on

---

³FINRA, which stands for the Financial Industry Regulatory Authority, is the entity that performed the arbitration in the instant case. FINRA describes itself as the "leading non-governmental regulator for all securities firms doing business with the U.S. public. . . ." http://www.finra.org/AboutFINRA/Leadership/index.htm (last visited Feb. 10, 2010)

her firm's website and on the internet prior to the arbitration hearing. *Id*. at ¶ 38. Thus, it was discoverable upon the exercise of due diligence by the plaintiff prior to the hearing. Indeed, the plaintiff testified at the hearing that she was only familiar with Ms. Grannum "from the internet." Transcript of Arbitration Hearing, attached as Exh. I. to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Vacate, at p. 9, Dkt. #34-4 (07 C 4244).

For these reasons, the court concludes that the plaintiff's assertion that Ms. Grannum's pervious position on the NAMC led to undue influence over the arbitration panel is without merit.

### ii. Arbitrator Leon Fox

The plaintiff also objects on the ground that Leon Fox, chair of the arbitration panel, worked at Morgen & Fox, a law firm that Ditkowsky asserts is a firm of "Defense Lawyers." According to the plaintiff, by working for a firm of defense lawyers, Mr. Fox was in violation of the FINRA Industry Code promising neutral individuals for the chairperson of the arbitration panel, and she argues that he had a natural bias and sympathy toward the defendants.

However, the plaintiff fails to point to any rule that prevents a lawyer from a "defense firm" from being the chairperson of an employment arbitration panel. The rule simply provides that "a chair [in a case involving a statutory discrimination claim]. . . may not have represented primarily the views of employers or of employees within the last five years. For purposes of this rule, the term 'primarily' shall be interpreted to mean 50% or more of the arbitrator's business or professional activities within the last five years." FINRA Rule 13802.

According to Ms. Grannum's affidavit, Mr. Fox's profile, which was provided to the parties, indicated, among other things, that: (1) Mr. Fox "draft[s] and negotiate[s] employment

and partnership agreements; and (2) "[a] significant aspect of Mr. Fox's practice is representing employees in discrimination and wrongful termination cases." Grannum Aff. at ¶ 19, Dkt. #34-1 (07 C 4244). The record does not support the plaintiff's assertion that Mr. Fox was a biased arbitrator.

More importantly, as Ms. Grannum points out in her affidavit, the FINRA rules provide that potential arbitrators are selected by a Neutral List Selection System that "generates, on a random basis, lists of arbitrators from FINRA's roster of arbitrators. . . ." *See* FINRA Code of Arbitration Procedures, Rule 13400(a), attached as Exh. F to Grannum Affidavit, which is attached to the Defendant's Opposition to Motion to Vacate. FINRA sends the lists to the parties at the same time, along with "employment history for the past 10 years and other background information for each arbitrator listed." FINRA Rule 13403(c). The parties then have the opportunity to strike any candidate, including those for chairperson, for any reason. FINRA Rule 13404. Leon Fox was included on the list from FINRA as a qualified chair of the arbitration panel. *See* Exh. G to Grannum Affidavit, attached to Defendants' Opposition to Motion to Vacate. The plaintiff did not strike Mr. Fox although given the opportunity to do so. Moreover, the plaintiff's counsel confirmed that he accepted the composition of the arbitration panel on the first day of the hearing. *See* Transcript of Hearing, attached as Exh. I to Grannum Affidavit, which is attached the Defendant's Opposition to the Motion to Vacate, at 4-5. The plaintiff has not provided any basis on which she can now challenge the appointment of Mr. Fox as the chairperson based on information that was previously available to her.

In addition, the plaintiff asserts that Mr. Fox works at a firm that specializes in Immigration Law, "only perhaps dabbling in Employment Law," and argues that this is a violation of the requirement that the chair have "substantial familiarity with employment law."

11

However, Mr. Fox was selected by FINRA as a candidate for chairperson with qualifications for statutory employment cases, *see* Exh. G to Grannum Affidavit attached to Defendants' Memorandum of Law in Opposition to Motion to Vacate, Dkt. #34- 11 (07 C 4244). Moreover, as already noted, the plaintiff's counsel was provided with all of Mr. Fox's background information and qualifications, in addition to profiles of seven other potential chairpeople for the panel and while the plaintiff's counsel had the chance to strike Mr. Fox from the panel, he chose not to do so. Indeed, the plaintiff's counsel subsequently confirmed that he accepted the panel. Accordingly, the court rejects the plaintiff's assertion that Mr. Fox was partial or unqualified.

### iii. Objection to Behavior of Ms. Grannum

The plaintiff next asserts that Ms. Grannum used unethical and undue means against her to procure an award in the defendants' favor. Specifically, she asserts that Ms. Grannum accused her of false criminal acts, engaged in mean and belittling behavior and name calling against the plaintiff, and "launched into a full tirade of hateful behavior and complete character assassination against Plaintiff in her erratic closing argument." Furthermore, the plaintiff asserts that Ms. Grannum used her position of power within FINRA's NAMC (National Arbitration and Mediation Committee) to undermine FINRA's rules and to engage in the unauthorized practice of law in Illinois knowing that she would not be monitored.

First, the court notes that "mean and belittling" behavior by opposing counsel is not a basis under the FAA for vacating an arbitration award. The court concludes that the plaintiff's vague and unsupported assertions that Ms. Grannum's cross-examination and closing argument was "abusive" and amounted to an "assassination" of the plaintiff do not entitle her to relief under the FAA. The plaintiff further asserts that Ms. Grannum accused the plaintiff of "false criminal acts" including that the plaintiff stole client files and letters from the branch manager's

office and that the plaintiff authored, reproduced and placed pornography in the U.S. Mail. Again, however, the plaintiff has provided no citation to the record in support and the court declines to hunt through the voluminous filings by the plaintiff to locate such support.

As to the assertion that Ms. Grannum used undue means against the plaintiff by engaging in the unauthorized practice of law with the knowledge that she would not be stopped, the defendants note that Ms. Grannum in no way attempted to hide the fact that she was only a member of the New York and New Jersey bars as this information was displayed on Ms. Grannum's website and letterhead. Moreover, Ms. Grannum told the plaintiff's counsel that she was not licensed to practice law in Illinois (*see* Grannum Aff. at ¶ 13, Dkt. #34-1 (07 C 4244)). Notably, the Illinois Appellate Court has held that Illinois law permits the representation by out-of-state attorneys at arbitration hearings. *Colmar, Ltd. v. Fremantlemedia North America, Inc.*, 801 N.E.2d 1017, 1029 (Ill. App. Ct. 2003)(stating that "there is no authority which explicitly prohibits an out-of-state attorney from representing a client in arbitration in Illinois" and concluding that "the arbitrator correctly determined that [the out-of-state attorney] could participate").

For these reasons, the court rejects the plaintiff's contention that Ms. Grannum used "unethical or undue" means to procure an award in the defendants' favor.

      c.     *Objection to Arbitrators' Award Regarding Matters Not Submitted to Them*

The plaintiff objects to the fact that the arbitrators ordered her to pay the defendants $1,000 for "Removal of Internet Content." She argues that the award was improper because the matter was never presented to the panel and the defendants never filed a motion requesting money damages for the removal of documents from the internet. The plaintiff's claim that the matter was not presented to the panel is belied by the record and her own statements. As noted by the defendants, they filed a motion asking, in relevant part, for an award of costs to have

13

information about the instant case "expunged" from the internet. *See* Grannum Affidavit dated filed on January 15, 2010 ("Grannum Affidavit II"), Dkt. #22 at ¶ 22, and motion attached as Exhibit D to Grannum Affidavit II the defendants. Without opining on the propriety of the panel's award, the court rejects the plaintiff's claim that the issue was not presented to the panel.

In addition, the plaintiff argues that the panel improperly ruled that "A.G. Edwards is granted leave to take any appropriate action regarding any alleged missing documents," *see* FINRA Dispute Resolution Award dated June 8, 2009, attached as Exhibit MM to Plaintiff's Motion to Vacate, because the matter was not submitted to the arbitration panel. However, as noted by the defendants, they made a written motion asking that in the event the panel found that the plaintiff improperly removed client information from her office, it refer her actions to the appropriate regulators for review. *See* Respondent's Response to Ditkowsky's Motion of April 28, 2009 and Cross-Motion for a Referral to the Regulators, attached as Exh. K to Grannum's Affidavit, which is attached to the Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Vacate, Dkts. #34-15 and #55-1 (07 C 4244). Accordingly, because this issue was presented to the panel, the court rejects this basis for relief.

    d.  *Objection to Arbitrators' Refusal to Hear Evidence*

The plaintiff also asserts that the arbitrators engaged in misconduct when, in an effort to conclude the proceedings quickly, the arbitrators would not allow her attorney to call Ms. Victoria Donati after the defendants had submitted Ms. Donati's affidavit to the arbitrators. The record indicates that Ms. Donati was employed as an attorney for the law firm that was hired by the defendants to do an internal investigation of their office after the plaintiff filed her discrimination charge with the EEOC. The plaintiff asserts that the investigation was a "bogus and biased" investigation. She also asserts that she was "denied [a] fair opportunity to prove the

core of Plaintiff's case on the retaliatory discharge, sexual harassment, hostile work environment and U-5 defamation charges." Plaintiff's Reply and Response to Cross-Motion to Confirm, at p. 9.

As an initial matter, it is not clear how cross-examining Ms. Donati would have proven the core of the plaintiff's case because the plaintiff fails to so articulate. In any event, the record indicates that the plaintiff had ample opportunity to call Ms. Donati had she chosen to do so. Ms. Donati's report was attached to the defendant's arbitration answer and the plaintiff was notified by the defendants prior to the hearing that Ms. Donati was a potential witness. *See* Exh. K to the defendant's Statement of Answer, which is attached as Exh. B to Grannum's Affidavit. *See* Dkts. #34-10 and #53-1 (07 C 4244). If, as the plaintiff argues, Ms. Donati were such a critical witness to her case, she had the opportunity to call her.

The court also notes that, when the subject of the affidavit first was raised, the plaintiff's counsel himself stated that the matter could be handled by his filing an objection to the affidavit. *See* Plaintiff's Transcript at 179 (Mr. Ditkowsy: "We can always do it on the basis of — she can file [the affidavit] and I can file an objection to it. That's another way of doing this." Chairman Fox: "Okay. . . ."). Indeed, when Ms. Grannum later submitted the affidavit, Mr. Ditkowsky objected on the ground that he was unable to cross-examine the witness. *Id*. at 282. The panel ultimately agreed to allow the defendants to submit the affidavit but stated "I think to the panel, it's really of no moment." *Id*. at 284.

Ultimately, the court finds no basis on which to conclude that the panel refused to hear evidence that was pertinent and material to the hearing. Therefore, this basis for vacating the award is denied.

  e.  *Other Matters*

###### i. Expungement of U-5

"Any dealer in securities who is a member of the NASD must file a Form U-5 whenever a registered agent leaves the firm for any reason." *Dawson v. New York Life Ins. Co.*, 135 F.3d 1158, 1161 (7th Cir. 1998). The U-5 filed by A.G. Edwards states that the plaintiff was terminated for actions "incompatible with office decorum; no securities violations." *See* Exh. LL to Plaintiff's Combined Reply, Response, Memorandum of Law, Dkt. #11-42. The plaintiff seeks to have her Form U-5 expunged and states that "[t]he employer . . . must initiate this expungement with FINRA." Plaintiff's Motion to Vacate, Dkt. #26-1 (07 C 4244), at 29. Thus, it appears that the plaintiff is asking the court to direct A.G. Edwards to initiate expungement. However, the plaintiff provides no basis on which the court can provide such relief on a motion to vacate an arbitrator's award. Accordingly, to the extent that the plaintiff is asking the court for such relief, it is denied.

###### ii. Matters Raised for First Time in Reply

The plaintiff raises several other matters in her reply brief, including allegations that:

-- Certain defendants and their attorney snuck into the hearing room on the evening of May 12, 2009, and stole the motion for a directed verdict that the plaintiff's counsel had planned to present to the panel the following day.

-- Arbitrator Wallace displayed evident partiality when he laughed at defendant Forlow's testimony and asked for the martini recipe discussed during the testimony.

-- The defendants also served on the National Arbitration and Mediation Committee for FINRA.

-- Arbitration chair Leon Fox misrepresented his credentials.

-- Defense counsel sits on a panel that trains arbitrators nationwide and thus exercised undue influence over the arbitration panel.

-- Defendant Forlow lied under oath.

> -- The arbitration panel refused to hear evidence concerning the EEOC investigation and the plaintiff's defamation claim.

Most of these issues were not raised by the plaintiff in her 30-page opening motion, although she had ample opportunity to raise them. The plaintiff, therefore, has waived her right to present these issues to the court. Even if the court were to consider these arguments, it would deny them as they provide no basis for relief. Any other claims that overlap with those already discussed are denied for the same reasons stated earlier in this order.

### iii. Rule 11 Violations

Finally, the defendants assert in their final brief that the plaintiff has violated Rule 11. To the extent that they seek any relief for these alleged violations, it is denied as there is no indication that they have complied with the safe harbor provision of the rule.

### CONCLUSION

As explained above, this court denies the plaintiff's Motion to Vacate the FINRA Arbitration Case Number 08-00263 Award [Dkt. #6-1 in 07 C 4244 and Dkt. #3-1 in 09 C 6563] and grants Defendant's Cross-Motion to Confirm the Arbitration Award [Dkt. #35-1 in 07 C 4244 and Dkt. #4-1 in 09 C 6563]. The plaintiff's motion to strike [Dkt. #17-1 in 09 C 6563] is denied for the reasons stated above. Plaintiff's affidavit [26] is stricken as having been filed without leave of court.

**ENTER:**
**DATE**: February 17, 2010

*Blanche M. Manning*
**Blanche M. Manning**
**United States District Judge**